| | | |
|---|---|---|
| RJANO HOLDINGS, INC. AND MAISON ROYALE, LLC | * | NO. 2022-CA-0058 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| PHELPS DUNBAR, LLP, KIM BOYLE, REBECCA SHA, GREENBERG & TRAURIG, P.A. AND GREGORY KEHOE | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-02531, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**JAMES F. MCKAY, III**
**JUDGE PRO TEMPORE**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Paula A. Brown, Judge Pro Tempore Judge James F. McKay, III)

ROBERT G. HARVEY, SR.
LAW OFFICE OF ROBERT G. HARVEY, SR., APLC
600 North Carrollton Avenue
New Orleans, Louisiana 70119
    Counsel for Plaintiff/Appellant

JAMES M. GARNER
JOSHUA S. FORCE
STUART D. KOTTLE
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
    Counsel for Defendants/Appellees, Phelps Dunbar, LLP, Kim Boyle, and
    Rebecca Sha

EWELL ELTON EAGAN, JR.
CECIL BYRON BERRY, JR.
ALEX B. ROTHENBERG
GORDON ARATA MONTGOMERY BARNETT, MCCOLLUM, DUPLANTIS
& EGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
    Counsel for Defendants/Appellees, Greenberg Traurig, P.A. and Gregory W.
    Kehoe

**AFFIRMED**
**SEPTEMBER 21, 2022**

JFM
RML
PAB

Plaintiffs-Appellants, RJANO Holdings, Inc., and Maison Royale, LLC ("Plaintiffs"), appeals the trial court's February 19, 2021 judgment, which granted the exception of lack of procedural capacity and the special motion to strike filed by Defendant-Appellees, Phelps Dunbar, L.L.P, Kim Boyle, Rebecca Sha, Greenberg & Traurig, P.A. and Gregory Kehoe ("Defendants"), and the trial court's June 1, 2021 judgment, which denied the motion to recuse filed by Plaintiffs. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This lawsuit is one of many stemming from a failed purported joint business venture. The underlying facts of this case are described in this Court's opinion in *Sutton v. Adams*, 2018-0196 (La. App. 4 Cir. 12/19/18), 318 So.3d 776. This Court stated, in relevant part:

> In June of 2011, Rick Sutton and Jack Adams entered into some type of business relationship regarding the operation/creation of an upscale fine jewelry and art gallery to be located at 501 Royal Street in New Orleans. At this time, Mr. Sutton was negotiating a buyout of his family's business, which had operated as the Jack Sutton Company at 501 Royal Street for over fifty years. Mr. Sutton and Mr. Adams formalized their agreement through the formation of RJANO and Maison Royale, LLC. RJANO was the entity that leased the property

1

at 501 Royal Street and Maison Royale was the store that operated at 501 Royal and a subsidiary of RJANO. However, according to Mr. Adams, Mr. Sutton was unable to satisfy the obligations of the agreement and in September of 2012, Mr. Sutton agreed to become a salaried employee. This point is disputed by Mr. Sutton.

By October of 2014, the relationship between Mr. Adams and Mr. Sutton had deteriorated. Mr. Adams approached Mr. Sutton and told him he was fired and threatened to have him arrested for trespassing. Mr. Adams also changed the passwords on the business's computers and removed Mr. Sutton's name from the business's bank accounts, among other things.

*Sutton*, 2018-0196, p. 1-2, 318 So.3d at 779-780.

Thereafter, there have been several lawsuits in connection with the failed business venture, including: Sutton's 2014 individual and derivative suit for breach of contract and damages against Adams, Maison Royale, and RJANO ("derivative suit");[1] Sutton's 2015 suit against Adams and Maison Royale for purportedly unpaid wages ("wage suit");[2] Sutton's 2015 petition against Adams for defamation and intentional infliction of emotional distress ("defamation suit");[3] Sutton's 2016 suit which set forth causes of action for violations of the Louisiana Racketeering Act (RICO); violations of the Louisiana Unfair Trade Practices Act (LUTPA); fraud and misrepresentation; breach of fiduciary duty; and detrimental reliance ("RICO suit").[4] *See Sutton*, 2018-0196, pp. 2-3, 318 So.3d at 780. Additionally, in

---

[1] The derivative suit was allotted Case No. 2014-10707, Div. "N," in Civil District Court of Orleans Parish. Judgment resulting from the derivative suit is pending before this Court in 2019-CA-0992.

[2] The wage petition was allotted Case No. 2015-3495, Div. "D," in Civil District Court of Orleans Parish. The trial court judgment granting exceptions of no cause of action and no right of action is subject to an appeal currently pending before this Court in 2019-CA-0975.

[3] The defamation suit was allotted Case No. 2015-4829, Div. "M," in Civil District Court of Orleans Parish. Adams filed a motion to dismiss the suit as abandoned, which the trial court denied. This Court reversed that judgment and found the defamation suit was abandoned in *Sutton v. Adams*, 2019-0394 (La. App. 4 Cir. 5/29/2019), 273 So.3d 1276.

[4] The RICO suit was allocated Case No. 2016-11427, Div. "D," in Civil District Court of Orleans Parish. The trial court granted exceptions of no right of action/no cause of action and exception

2017 Adams sued for abuse of process ("abuse of process suit")[5] and in 2019 Sutton filed a petition to nullify the judgment ("annulment suit")[6] stemming from the 2016 RICO suit.[7]

The aforementioned cases are subject to four appeals and four writ applications pending before this Court.[8] *See* Case Nos. 2019-CA-0247, 2019-CA-0975, 2019-CA-0992, 2019-CA-0795, 2019-C-0796, 2019-C-0845, 2019-C-0851, and 2019-CA-1105. This Court consolidated all pending appeals and writ applications on January 3, 2020.

On March 13, 2020, Plaintiffs, RJANO and Maison Royale (collectively, "Plaintiffs") filed the instant lawsuit against Phelps Dunbar, L.L.P, Kim Boyle, Rebecca Sha, Greenberg & Traurig, P.A. and Gregory Kehoe (collectively, "Defendants"), who previously represented RJANO, Maison Royale, and Adams. The petition was filed by Sutton as "stockholder, member, and partner" of RJANO and Maison Royale and asserted several causes of action against Defendants

---

of lack of personal jurisdiction. This Court affirmed the trial court's ruling in *Sutton v. Adams*, 2018-0196 (La. App. 4 Cir. 12/19/18), 318 So.3d 776.

[5] The abuse of process suit was allotted Case No. 2017-3907, Div. "L," in Civil District Court of Orleans Parish. Two appeals and two writ applications are pending before this Court based on the abuse of process proceeding. The appeal in Case No. 2019-CA-0247 is based on a writ of quo warranto judgment issued in favor of Sutton; the writ application in 2019-C-0851 is based on multiple exceptions, including exceptions of no right of action and *res judicata*; the appeal in 2019-CA-1105 and writ in 2019-C-0797 is based on judgment granting a motion to nullify the RICO suit judgment.

[6] The petition for nullity was allotted Case No. 2019-3156, Div. "N," in Civil District Court of Orleans Parish. Writ applications relating to a motion transfer was filed in 2019-C-0795 and 2019-C-0845.

[7] According to Defendants' brief, subsequent to a May 2017 judgment in in the derivative lawsuit (Case No. 2014-10709), which relieved Adams of any lease obligations, RJANO and Maison Royale effectively ceased operation.

[8] *See* n. 1-6.

3

arising out of Defendants' representation, including: legal malpractice, breach of professional conduct, conflict of interest, and fraud.

On October 13, 2020, Defendants filed an exception of lack of procedural capacity, claiming that that Sutton does not have the legal capacity to sue on behalf of RJANO or Maison Royale.[9] Defendants note that while RJANO and Maison Royale are listed as the Plaintiffs in the petition, the true plaintiff in this litigation is Sutton.

Defendants also filed a special motion to strike on October 26, 2020, seeking to strike the fraud allegations alleged by Plaintiffs. Plaintiffs filed an opposition to the motion to strike on December 1, 2020 and an opposition to the exception for lack of procedural capacity on December 4, 2020.[10] Defendants filed a reply memorandum in support of their exceptions on January 13, 2021.[11]

The matter came for hearing before Judge Robin Giarrusso via Zoom on January 15, 2021, and the trial court granted the motion to strike and the exception of lack of procedural capacity.[12] Judgment to that effect was rendered on February

---

[9] Twenty-five exhibits were attached to the exception of lack of procedural capacity which was later offered, along with two additional exhibits attached to the reply, into evidence at the hearing. *See* n. 12.

[10] In support of the opposition, Plaintiffs submitted a print out from the Louisiana Secretary of State website, which lists Sutton as a director/officer of RJANO; a print out from the Louisiana Secretary of State website showing that Adams is listed as the registered agent and manager of Maison Royale; the judgment, dated December 1, 2014, and reasons for judgment in the derivative suit, which granted a preliminary injunction in favor of Sutton, individually and derivatively on behalf of RJANO and Maison Royale against Adams.

[11] Defendants attached two additional exhibits in their reply, including a motion for summary judgment and related replies filed in the derivative suit and the Articles of Organization and the Initial Report of Maison Royale.

[12] At the hearing, Defendants offered twenty-seven exhibits in support of its exception of lack of procedural capacity. The exhibits included the petitions filed in CDC of Orleans Parish, various pleadings from litigation, judgments, the appellate actions resulting from those judgments, excerpt from the transcript in derivative suit from trial court proceedings, Fourth Circuit orders; and the Articles of Incorporation and Initial Report of Maison Royale. Plaintiffs also offered the exhibits attached to their briefs and their original petition into evidence. *See* n. 11. Plaintiffs'

19, 2021.[13] The judgment also awarded attorney's fees in connection with the motion to strike and dismissed Plaintiffs' case with prejudice.[14]

On March 2, 2021, Plaintiffs filed a motion to recuse Judge Giarrusso on the several grounds, including that she is biased or prejudiced towards the parties/parties' attorneys because she admitted that knows Boyle well and was previously represented by Phelps Dunbar. The motion to recuse was re-allotted to Judge Omar Mason.

The motion to recuse came for hearing on May 19, 2021, and Judge Mason denied the motion as untimely. Judgment denying the motion to recuse was executed June 1, 2021.

This appeal follows.

### DISCUSSION

Plaintiffs assert three assignments of error on appeal: (1) the trial court erred in granting the exception of lack of procedural capacity and in dismissing the lawsuit without giving Plaintiffs the opportunity to amend; (2) the trial court erred in granting the motion to strike the fraud allegations; and (3) the trial court judge

---

petition attached seven exhibits, which included pleadings and a judgment, dated December 7, 2018 and reasons on Sutton's application for writ of quo warranto and writ of mandamus from the abuse of process litigation; the June 17, 2015 deposition of Adams in connection with the derivative suit as well as Adams' "answer and affirmative defenses" and March 22, 2019 transcript on an exception of *res judicata* in the derivative suit; as well as correspondence from Sutton. Plaintiffs refer to Adams' "answer and recoventional demand" in attempt to show that Adams conceded that he and Sutton agreed to partner in opening a store. However, the attached exhibit is actually Adams' answer and affirmative defenses and does not contain a similar statement. In fact, in the answer and affirmative defenses, Adams claims that Sutton cannot establish the existence of a partnership.

[13] The judgment also mooted a dilatory exception of vagueness also filed by Defendants.

[14] The trial court did not give written reasons on the exception/motion to strike. This Court ordered a *per curiam* when it was before this Court on writs in 2021-C-0434. The *per curiam* does not appear to be in the record for appeal. Further, Plaintiffs concede that the *per curiam* was not filed in the record in the court below in their appellate brief.

erred in failing to recuse herself. However, because we find that Sutton lacks the procedural capacity to sue on behalf of RJANO and Maison Royale, we need not reach the other assignments of error.

*Exception of Lack of Procedural Capacity*

The exception of lack of procedural capacity is a dilatory exception. La. C.C.P. art. 926. A dilatory exception generally delays the progress of the action. La. C.C.P. art. 923. When the grounds of the objection pleaded in a dilatory exception can be removed by amendment of the petition, a judgment sustaining the exception should order the plaintiff to remove the grounds for objection. *Bourbon Invs., LLC v. New Orleans Equity LLC*, 2015-1234, p. 12 (La. App. 4 Cir. 12/21/16), 207 So.3d 1088, 1095 (citing La. C.C.P. art. 933(B)). However, if the grounds of the objection cannot be removed the action may be dismissed. *Id*.

This Court recently summarized the law on the exception of lack of procedural capacity in *Neighbors of 200 Henry Clay Ave. v. Bd. of Zoning Adjustment*, 2021-0387, pp. 5-6 (La. App. 4 Cir. 1/26/22), 335 So.3d 255, 259, *writ denied sub nom. Neighbors of 200 Henry Clay Ave. v. Bd. of Zoning Adjustment of the City of New Orleans*, 2022-00337 (La. 4/20/22), 336 So.3d 467, as follows:

> "Whether a party has the power to sue or be sued is an issue typically raised in the dilatory exception of lack of procedural capacity." *Downtown Dev. Dist. of City of New Orleans v. City of New Orleans*, [20]18-0726, p. 7 (La. App. 4 Cir. 5/8/19), 272 So.3d 917, 925. "The dilatory exception of lack of procedural capacity raises the issue of want of capacity of the plaintiff to institute and prosecute the action and stand in judgment, and/or challenges the authority of a plaintiff who appears in a purely representative capacity." *Rain CII Carbon, L.L.C. v. Recon Eng'g, Inc.*, [20]18-0916, p. 4 (La. App. 4 Cir. 5/1/19), 270 So.3d 785, 788 (*quoting English Turn Prop. Owners Ass'n v. Taranto*, [20]16-0319, p. 6 (La. App. 4 Cir. 4/19/17), 219 So.3d 381, 387). "The exception 'tests a party's legal capacity to bring suit.'" *Rain*, 18-0916, p. 4, 270 So.3d at 788 (quoting *Mt. Zion Baptist Ass'n v. Mt. Zion Baptist Church # 1 of Revilletown Park*, [20]16-0151, p. 5 (La. App. 1 Cir. 10/31/16), 207 So.3d 414, 417).

> "'The determination of whether a party has the procedural capacity to sue or be sued involves a question of law.'" *Downtown*, [20]18-0726, p. 7, 272 So.3d at 925 (quoting *Woodard v. Upp*, 13-0999, p. 5 (La. App. 1 Cir. 2/18/14), 142 So.3d 14, 18). As such, "[t]he *de novo* standard of review ... applies to our review of the trial court's ruling on a dilatory exception of lack of procedural capacity." *English Turn*, [20]16-0319, pp. 5-6, 219 So.3d at 387.

A domestic corporation and a domestic limited liability company has the procedural capacity to sue to enforce its rights in the corporate or company name. La. C.C.P. art. 690. "An agent has the procedural capacity to sue to enforce a right of his principal, when specially authorized to do so." La. C.C.P. art. 694. "When a plaintiff sues as an agent to enforce a right of his principal, or as a legal representative, his authority or qualification is presumed, unless challenged by the defendant by the timely filing of the dilatory exception." La. C.C.P. art. 700. "When so challenged, the plaintiff shall prove his authority or qualification on the trial of the exception." *Id*.

Plaintiffs allege that the record shows that Sutton has a right to bring suit on behalf of RJANO and Maison.[15] Specifically, Plaintiffs point to (1) an earlier judgment in the abuse of process suit, which stated that both Sutton and Adams own fifty percent of RJANO shares; (2) the "multiple occasions" wherein Adams allegedly judicially confessed that Sutton was his partner, an officer, or a director of RJANO and a partner in Maison Royale; (3) that Adams allegedly was a "conflicted director/owner" who committed "conflicting interest transactions" who "could not vote on matters concerning his own fraud;" (4) the fact that Sutton originally brought derivative claims on behalf of Maison Royale/RJANO in 2014 and his procedural capacity was never questioned and that Defendants "thus

---

[15] In their brief, Plaintiffs allege that the record is "replete with evidence" that Sutton has a right to bring suits on behalf of RJANO and Maison Royale. However, Plaintiffs do not cite to the record in his brief but merely refers the Court to the petition and exhibits attached thereto.

waived" the argument; and (5) a judgment on the preliminary injunction in derivative suit, which held Sutton was a partner in the business with a right to access the books.

As discussed below, however, none of these arguments show that that Sutton has the procedural capacity to file suit because he cannot point to evidence via corporate bylaws or a resolution by the board of directors that he may act for RJANO, or show proof that Sutton is a member or manager such that he is authorized to act on Maison Royale's behalf. Accordingly, Sutton has no legal authority to represent either entity in this lawsuit.

<u>Lack of Procedural Capacity on Behalf of RJANO</u>

"A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members." La. C.C. art. 24. Thus, a corporation is a legal entity entirely separate and distinct in identity from its members. *See McKendall v. Williams*, 467 So.2d 1301, 1303 (La. App. 4 Cir. 1985) (citing *Landry v. St. Charles Inn, Inc.,* 446 So.2d 1246, 1251 (La. App. 4 Cir. 1984)).

A shareholder has no personal right of action against third persons for wrongs committed against or damaging to the corporation. *Harvey v. State*, 2014-0156, p. 11 (La. App. 4 Cir. 12/16/15), 183 So.3d 684, 695 (citing *Bayou Fleet P'ship v. Clulee*, 2013–934, p. 6 (La. App. 5 Cir. 9/10/14), 150 So.3d 329, 333–34; *Glod v. Baker,* 2002–988, p. 25 (La. App. 3 Cir. 8/6/03), 851 So.2d 1255, 1271.[16]

---

[16] To the extent that any personal right of action does exist, it must be grounded on injury that is "unique" or "special" to the shareholder. *Elysian, Inc. v. Neal Auction Co., Inc.*, 2020-0674, p. 12 (La. App. 4 Cir. 7/21/21), 325 So.3d 1075, 1085 (citing *Paul Piazza & Son, Inc. v. Piazza*, 2011-548, pp. 6-7 (La. App. 5 Cir. 12/28/11), 83 So.3d 1066, 1070; *St. Bernard Optical Corp. v. Schoenberger*, 2005-0548, p. 6 (La. App. 4 Cir. 1/25/06), 925 So.2d 604, 608). Where the alleged loss to the individual shareholder is the same loss that would be suffered by other shareholders, the loss is considered to be indirect and is not actionable individually. *Sun Drilling*

Louisiana corporate law generally places corporate power in the hands of the board of directors. *Shehee v. Shehee*, 52, 319, p. 9 (La. App. 2 Cir. 11/14/18), 260 So.3d 744, 750. La. R.S. 12:1-801(B) provides:

> All corporate powers shall be exercised by or under the authority of the board of directors of the corporation, and the business and affairs of the corporation shall be managed by or under the direction, and subject to the oversight, of its board of directors, subject to any limitation set forth in the articles of incorporation or in an agreement authorized under R.S. 12:1-732.

Decisions from the board of directors are made generally at a duly convened meeting of the board or through the written consent of all the corporation's directors. 8 La. Civ. L. Treatise, Business Organizations § 33:7 (citing La. R.S. 12:1-820; La. R.S. 12:1-821; La. R.S. 12:1-822- 12:1-824).

In the normal course of corporate operations, shareholders participate in corporate management only indirectly, through the exercise of their election of the board of directors, the body that holds all direct management powers. *Id* at n. 1 (citing La. R.S. § 12:1-803).

The authority to act on behalf of a corporation can only be conferred by the charter or a resolution of the board of directors. *McKendall*, 467 So.2d at 1303 (citing *Margolis v. Allen Mortgage and Loan Corporation*, 268 So.2d 714, 415

---

*Prod. Corp. v. Rayborn*, 00-1884, p. 18 (La. App. 4 Cir. 10/3/01), 798 So.2d 1141, 1154. But where the shareholder and not the corporation suffers the loss, the loss is considered to be direct and the shareholder may have the right to sue individually. *Id* Here, the petition seeks recovery for the "damages RJANO HOLDINGS, INC and MAISON ROYALE, LLC incurred as a result of the legal malpractice and other torturous actions" of Defendants. The petition alleged Defendants misrepresented concealed, and/or committed fraudulent acts against the interest of the companies. The petition alleged any purported legal malpractice would result in damages to the corporation, not individual shareholders of the companies. Accordingly, even assuming Sutton is a shareholder of RJANO he would not have a personal right to sue to Defendants in this case. *See Crosby v. Waits, Emmett, Popp & Teich, L.L.C.*, 2021-0054, p. 7, 2021 WL 4592822, at * 14-15, --- So.3d ---- (La. App. 4 Cir. 10/6/21) (finding that members of an LLC did not have a person right of action to sue for legal malpractice by attorneys who advised members to accept, pursuant to settlement agreement with a former member because any alleged legal malpractice would result in damages to LLC, and not to individual members).

(La. App. 4 Cir. 1972)); *see also Palowsky v. Cork,* 49,515, p. 5 (La. App. 2 Cir. 2/26/15), 162 So.3d 486, 489 ("[o]fficers and agents of a corporation have only such authority as is conferred by the bylaws or by the board of directors" and "an officer may not act without such authority").[17]

Here, Plaintiffs have neither alleged nor shown that any resolution or other corporate document exists which authorizes Sutton to file suit on behalf of RJANO.

Nevertheless, as noted above, in attempt to establish Sutton has procedural capacity to sue for RJANO, Plaintiffs point to a prior judgment in the abuse of process suit, which stated that Sutton and Adams each own fifty percent of RJANO shares. Plaintiffs also allege Adams had previously admitted that Sutton was an officer or a director of RJANO. These arguments appear to stem from the December 2, 2018 judgment and reasons for judgment on the writ of quo warranto and writ of mandamus filed by Sutton in the abuse of process suit. The judgment states that "at all times since the creation of RJANO:" Sutton "has owned and continues to own 50% of the shares of RJANO" and Adams "has owned and continues to own the remaining 50% of the shares of RJANO." In the reasons for judgment, the trial court noted that Adams had previously described Sutton as his partner and co-owner in RJANO to the public.

The December 2, 2018 judgment is subject to the appeal in Case No. 2019-CA-0247 pending before this Court. However, even assuming that Sutton and Adams have equal ownership interests in RJANO, this does not grant Sutton the

---

[17] La. R.S. 12:1-841 provides that "each officer has the authority and shall perform the functions set forth in the bylaws or, to the extent consistent with any bylaws, the authority and functions prescribed by the board of directors or by direction of an officer authorized by the board of directors to prescribe the authority and functions of other officers."

ability to sue on behalf of RJANO. Adams' statements to the public regarding Sutton's alleged partnership in RJANO is likewise not proof of authority to act for RJANO. As stated earlier, the power to act on behalf of a corporation can generally only be bestowed by the charter or bylaws of the corporation or by a resolution by the board of directors. *See McKendall*, 467 So.2d at 1303.

Further, as noted above, "shareholders' rights are for the most part indirect in nature: they participate in corporate management principally through the election of directors." 7 La. Civ. L. Treatise, Business Organizations § 10:3. Apart from the election and removal of directors, shareholders are normally entitled to vote directly only with respect to a few specified matters, i.e., most amendments of the corporate articles of incorporation; shareholder amendments of the bylaws; certain mergers and merger-substitutes, and voluntary dissolution. *Id*. at n. 9 (citing La. R.S. 12:1-803(C); La. R.S. 12:1-808; La. R.S. 12:1-1003(A)(3),(B)(5); La. R.S. 12:1-1020; La. R.S. 12:1-1104(5); La. R.S. 12:1-1202; La. R.S. 12:1-921(5) La. R.S.12:1-931(5); La. R.S. 12:1-952(5); and La. R.S. 12:1-1402(E)).

Moreover, as argued by Defendants, to the extent Sutton is a fifty percent owner, Sutton is arguably in a corporate deadlock with Adams and cannot file suit. In *Palowsky v. Cork*, 49,515 (La. App. 2 Cir. 2/26/15), 162 So.3d 486, 489, two individuals – Cork and Palowsky – incorporated a company, each of which were fifty percent shareholders and officers in the corporation. Palowsky discovered what he considered fraudulent billings by a subcontractor. He then filed lawsuit against the corporation, Cork, and others, and labeled the petition as a shareholder's derivative suit. Palowsky retained a lawyer to represent the corporation. The corporation then filed an answer admitting the some of the allegations of wrongdoing. Cork challenged the ability of Palowsky to hire a

lawyer for the company and moved to strike the corporation's answer. Cork argued that the corporation never authorized Palowsky to retain an attorney. The trial court denied the motion to strike.

The Second Circuit granted writs, because it noticed "on [its] own initiative" that Cork had filed a petition for dissolution of the corporation and found that the outcome of the separate dissolution proceeding would likely resolve the dispute over the authority to represent the corporation.[18] *Palowsky*, 49,515, p. 4, 162 So.3d at 489. The *Palowsky* Court noted that "officers and agents of a corporation have only such authority as is conferred by the bylaws or by the board of directors" and that the board had passed a resolution that that required Cork and Palowsky to act jointly. *Palowsky*, 49,515, pp. 4-5, 162 So.3d at 489. The Court noted that as a result of "this impasse" in corporate management Cork filed a petition to dissolve the company.[19] The Second Circuit noted that the dissolution procedure requires the court to appoint a liquidator and that the liquidator will be charged with deciding whether the corporation's best interest is served by retaining separate counsel and participating in the instant lawsuit. It then stated:

---

[18] Cork had alleged in his answer to the first supplemental petition, that he and Palowsky were "hopelessly deadlocked" in the management of corporate and that he had filed a suit for dissolution. *Palowsky*, 49,515, p. 2, 162 So.3d at 488.

[19] La. R.S. 12:1-1430(2) provides that a shareholder can initiate a proceeding to dissolve a corporation when:

> (a) The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock.
>      . . .
> (c) The shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired.

12

> This court is unwilling to break the 50-50 deadlock between Cork and Palowsky in a manner that might contradict the ultimate result in the dissolution. We decline to issue a ruling that the district court will have properly before it in the dissolution case.

*Palowsky*, 49,515, p. 6, 162 So.3d at 489. The Second Circuit thus maintained the status quo pending the appointment of a liquidator.

Here, unlike *Palowsky*, there is no evidence of a board meeting or resolution addressing either Adams or Sutton's ability to act on RJANO's behalf. Nevertheless, *Palowsky* suggests that even if Sutton and Adams are fifty percent shareholders in RJANO they would be in a deadlock and Sutton would not have the requisite authority to file this lawsuit.

Plaintiffs further claim Sutton has the capacity to sue for RJANO because Adams was a conflicted director/owner and could not vote on corporate matters. This argument appears to stem from an allegation in the petition and footnote stating that Adams as a "director had knowledge and a material financial interest known to the director." *See* La. R.S. 12:1-860(2) (defining a director's conflicting interest transaction).[20] This allegation, however, fails to illustrate that Sutton has the ability to sue on RJANO's behalf.

---

[20] La. R.S. 12:1-860(2) provides:

"Director's conflicting interest transaction" means any of the following:

(a) A transaction effected or proposed to be effected by the corporation, or by an entity controlled by the corporation, to which, at the relevant time, the director is a party.

(b) A transaction effected or proposed to be effected by the corporation, or by an entity controlled by the corporation, respecting which, at the relevant time, the director had knowledge and a material financial interest known to the director.

(c) A transaction effected or proposed to be effected by the corporation, or by an entity controlled by the corporation, respecting which, at the relevant time, the director knew that a related person was a party or had a material financial interest.

Plaintiffs also refer the judgment on the preliminary injunction in the derivative suit, which found that Sutton was a partner in the business. In that judgment, dated December 1, 2014, the trial court granted injunctive relief in favor of Sutton and enjoined Adams from preventing Sutton access to: "the books and records of the partnership, the leased premises located at 501 Royal Street in New Orleans, Louisiana, ability to engage in his job of selling merchandise in the partnership, and knowledge of the activities of the partnership as required by L[a][]C[.]C[.] article 2813."[21]

However, the record shows that in 2019 the trial court vacated the preliminary injunction when it granted Adams' exceptions of no right of action and *res judicata* and dismissed the claims asserted in the derivative lawsuit.[22] Additionally, the trial court's judgment in another lawsuit on whether Sutton was a partner in the business and entitled to access business records and the premises does not have effect on this Court's determination of whether Sutton has procedural capacity to sue on behalf of a corporation. *Cf. Ernest N. Morial New Orleans Exhibition Hall Auth. v. New Limits New Limits, LLC*, 2016-0706, p. 7 (La. App. 4 Cir. 4/5/17), 215 So.3d 974, 978 (decisions of other circuits are not binding on this Court and are persuasive authority only); *Rousse v. United Tugs,*

---

[21] La. C.C. art. 2813 provides:

> A partner may inform himself of the business activities of the partnership and may consult its books and records, even if he has been excluded from management. A contrary agreement is null.

> He may not exercise his right in a manner that unduly interferes with the operations of the partnership or prevents other partners from exercising their rights in this regard.

[22] The trial court in the derivative suit granted exceptions of no right of action and *res judicata* and dismissed the claims with prejudice on April 29, 2019. The trial court in the same judgment stated that the December 1, 2014 judgment granting the preliminary injunction against Adams was vacated.

*Inc.*, 2017-0585, p. 6 (La. App. 4 Cir. 12/20/17), 234 So.3d 1179, 1184 ("federal district court decisions are not binding on this Court, but we may find their 'rationale persuasive and concur with [their] conclusions'"). Moreover, the judgment on the preliminary injunction does not prove Sutton has the ability to act via corporate bylaws or board resolution.

Plaintiffs also claim that Defendants waived the ability to assert that Sutton lacks procedural capacity in this suit because when Sutton brought his 2014 derivative suit on behalf of RJANO his procedural capacity was purportedly never questioned. However, Defendants in the instant case were not parties to the derivative lawsuit and thus cannot have waived their right to argue lack of procedural capacity in connection with the current suit.[23]

There are no corporate documents, articles of incorporation, or board resolution evidencing that Sutton is empowered to act for RJANO.[24] None of the arguments asserted by Plaintiffs show that Sutton has the ability to file suit on RJANO's behalf. Moreover, even if Sutton was a shareholder of RJANO, Sutton has no individual right against Defendants for any alleged damages suffered by RJANO. Further, at best, RJANO is a deadlocked corporation and as such Sutton

---

[23] Additionally, a review of the answer and affirmative defenses filed by Adams, RJANO, and Maison Royale, the defendants in the derivative suit, shows that they alleged that Sutton had "no right of action" to bring derivative claims because Sutton cannot prove that he is a member of Maison Royale or a stockholder of RJANO, which was "a necessary status to have the right to bring a derivative suit." Thus, while Adams, RJANO, and Maison Royale did not raise the objection of lack of procedural capacity, they did challenge ability for Sutton to bring a derivative claim on behalf of Maison Royale and RJANO. *See* La. C.C.P. art. 928. As noted above, the derivative suit is pending before this Court in 2019-CA-0992.

[24] Plaintiffs do not specifically raise this in their brief, however, there is a print out from the Louisiana Secretary of State website in the record, which lists Sutton as a director/officer of RJANO. However, as stated above, the management of authority of the corporation is vested in the board of directors and authority to act can only be conferred by the bylaws or by board resolutions. The Secretary of State's print out does not show that Sutton has any specific authority to act or sue on behalf of RJANO.

15

did not have the authority to file suit on its behalf. Accordingly, the trial court did not err in granting the exception of lack of procedural capacity with respect to RJANO.

<u>Lack of Procedural Capacity on Behalf of Maison Royale</u>

Like a corporation, a limited liability company or an LLC is a juridical person and a business entity separate from its members and its members' liability. *Ogea v. Merritt*, 2013-1085, p. 6 (La. 12/10/13), 130 So.3d 888, 894–95 (citing La. R.S. 12:1301 (10); La. C.C. art. 24); *see also Metro Riverboat Associates, Inc. v. Bally's Louisiana Inc.*, 99–0983, p. 6 (La. App. 4 Cir. 1/24/01), 779 So.2d 122, 125.

A member shall have no interest in limited liability company property. La. R.S. 12:1329. Thus, members of a limited liability company have no right to sue personally for damages to limited liability company property. *Zeigler v. Hous. Auth. of New Orleans*, 2012-1168, p. 8 (La. App. 4 Cir. 4/24/13), 118 So.3d 442, 450 (citing La. R.S. 12:1320(B)); *Roth v. Voodoo BBQ,* 2007–0295, p. 3 (La. App. 4 Cir. 08/01/07), 964 So.2d 1095, 1097; and *Van Meter v. Gutierrez,* 2004–0706, p. 8 (La. App. 4 Cir. 2/16/05), 897 So.2d 781, 787). After "considering the applicable law," this Court in *Zeigler*, 2012-1168, p. 9, 118 So.3d at 450, found that a member of an LLC, in his personal capacity, had "no standing to personally sue and recover damages for injury suffered by" the LLC.

An LLC may be managed either by its members or by managers.[25] *See* La. R.S. 12:1311; La. R.S. 12:13:12; 8 La. Civ. L. Treatise, Business Organizations §

---

[25] La. R.S. 12:1311 states that "[e]xcept as otherwise provided in the articles of organization, the business of the limited liability company shall be managed by the members, subject to any provision in a written operating agreement restricting or enlarging the management rights and duties of any member or group or class of members. La. R.S. 12:13:12(A), however, states that the "articles of organization may provide that the business of the limited liability company shall be managed by or under the authority of one or more managers who may, but need not, be

44:7. Each member of an LLC or manager if the LLC is manager-managed, are agents of the LLC in the ordinary course of its business, except for the alienation, lease or encumbrance of the LLC's immovable. *See* 8 La. Civ. L. Treatise, Business Organizations § 44:8. La. R.S 12:1317(A) provides that "[e]ach member, if management is reserved to the members, or manager, if management is vested in one or more managers pursuant to R.S. 12:1312, is a mandatary of the limited liability company."[26]

"The mandatary may perform all acts that are incidental to or necessary for the performance of the mandate." La. C.C. art. 2995. "The authority granted to a mandatary to perform an act that is an ordinary part of his profession or calling, or an act that follows from the nature of his profession or calling, need not be specified." *Id.*

Maison Royale is an LLC that was formed on October 31, 2011. The records filed with the Louisiana Secretary of State list Adams as the sole member/manager and registered agent of Maison Royale.[27] The allegations in the petition do not establish Sutton has the authority to sue for Maison Royale. Additionally, there are

members." Thus, if the LLC is to be managed by managers, a statement to that effect must be included in the LLC's articles of organization. If the articles are silent on the subject, the LLC is managed directly by its members. 8 La. Civ. L. Treatise, Business Organizations § 44:7.

[26] The only authority not generally afforded a managing member or manager is to alienate, lease, or encumber the company's immovables. La. R.S. 12:1317(A) provides:

> Each member, if management is reserved to the members, or manager, if management is vested in one or more managers pursuant to R.S. 12:1312, is a mandatary of the limited liability company for all matters in the ordinary course of its business other than the alienation, lease, or encumbrance of its immovables, unless such mandate is restricted or enlarged in the articles of organization or unless such member or manager lacks the authority to act for the limited liability company and the person with whom he is dealing has knowledge of the fact that he lacks such authority.

[27] Notably, Sutton alleged in the petition in the wage suit that Adams was the manager of Maison Royale.

no documents in the record that show that Sutton is a member or manager of Maison Royale such that he is the mandatory who could act or sue on its behalf.

Further, similar to Sutton's lack of authority to act on the corporation's behalf, Plaintiffs alleged proof of procedural capacity likewise fails to show he has ability to sue on behalf of Maison Royale. The vacated preliminary injunction in the derivative suit does not prove Sutton's membership interests in or management of Maison Royale. Additionally, as stated above, Plaintiffs' allegation that Defendants waived the ability to assert lack of procedural capacity because the argument was not raised in the derivative suit lacks merit as Defendants were not parties therein. The conflicted director claim also does not establish Sutton authorization to act on Maison Royale's behalf.

With regard to the allegation that Adams has judicially confessed that Sutton was a member of Maison Royale, in their reply brief, Plaintiffs cite to Adams' January 30, 2019 deposition. However, this deposition was not included in the petition nor in the opposition to the exception and was not offered at the hearing. Furthermore, the January 30, 2019 deposition is not contained in the record for the instant appeal and as such, cannot be considered by this Court. *See Interdiction of Zimmer*, 2017-0900, p. 3, n. 1 (La. App. 4 Cir. 3/14/18), 242 So.3d 669, 671 (an appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence); *see also* La. Unif. R. Ct. App. 2-1.7 (stating "[n]o record of another case (or prior record in the same titled and numbered case) shall be included in the record, unless such other record has been introduced in evidence

(at trial) in the case on appeal or on writs, in which event such other record shall accompany the record as an exhibit").[28]

As discussed above, an LLC is a juridical entity separate from its members, and members have no standing to personally sue to recover damages for injuries suffered by the LLC. Moreover, only Maison Royale has the ability to sue to enforce rights in its name. Further, Sutton has not established that he is a member or manager of Maison Royale and thus has not shown that he has the procedural capacity to act or file this lawsuit on Maison Royale's behalf.

Moreover, in the RICO suit, this Court in *Sutton v. Adams*, 2018-0196 (La. App. 4 Cir. 12/19/18), 318 So.3d 776, 783, found that Sutton did not have a membership interest in Maison Royale and affirmed the trial court's judgment on the exceptions of no cause of action and no right of action concerning Sutton's claims for breach of fiduciary duty. This Court stated, in relevant part:

> In the instant case, the trial court determined that the corporate documents that the defendants admitted into evidence, including the filings with the Louisiana Secretary of State and with the Internal Revenue Service, were the most clear and objective manner of determining Maison Royale's ownership. These documents plainly showed that *Mr. Sutton was not a member of Maison Royale* and therefore he had no right of action for breach of fiduciary duty because he was claiming an alleged duty not owed to him but to Maison Royale and its members. Likewise, the trial court also correctly determined that Mr. Sutton did not allege a valid cause of action for breach of a fiduciary duty. The petitions contain no factual allegation that Jack Adams acted with gross negligence or that Jack Adams's purported breach of duty was the legal cause of any alleged damages suffered by Mr. Sutton.

---

[28] Relatedly, Adams testified in his deposition in connection with the derivative suit that "everything from RJANO folded into Maison [Royale]," which Sutton claims demonstrates that any interest in he had in RJANO is now in Maison Royale. However, Adams also testified in that deposition he was not aware if any documents that dissolved RJANO or show that Maison Royale assumed ownership of RJANO stock. Additionally, Plaintiffs have failed to provide documentary proof that Sutton owns shares in RJANO such that the shares were now in Maison Royale.

*Sutton v. Adams*, 2018-0196, 318 So.3d at 783.[29] (emphasis added). This Court denied Sutton's request for rehearing. The Louisiana Supreme Court then denied Sutton's application for certiorari review, and subsequent application for reconsideration in 2019. *See Sutton v. Adams*, 2019-0346 (La. 4/22/19), 267 So.3d 1112; *Sutton v. Adams*, 2019-00346 (La. 9/6/19), 278 So.3d 362. Therefore, in addition to the lack of evidence establishing Sutton's ownership interests in Maison Royale, this Court specifically found that Sutton is not a member thereof.

Moreover, even if Sutton was a member of Maison Royale, there is no allegation in the petition nor evidence that Sutton had the majority vote of the members to file the current lawsuit. Louisiana LLC law states that when an LLC is managed by its members each member is entitled to one vote.[30] *See* La. R.S. 12:1318(A) (providing for voting rights of members and stating that unless otherwise provided in the LLC's articles or operating agreement, "each member of a limited liability company shall be entitled to cast a single vote on all matters properly brought before the members, and all decisions of the members shall be made by majority vote of the members").[31]

---

[29] As noted above herein, this judgment was subject to the Sutton's annulment suit. The trial court's ruling in that litigation is at issue before this Court in 2019-CA-1105 and 2019-C-0797.

[30] If the LLC is managed by managers, the managers, not the members, are entitled to decide by majority vote, one vote per manager, on most managerial issues. *See* La. R.S. 12:1316 (stating "[e]xcept as otherwise provided in the articles of organization or an operating agreement, if the limited liability company has more than one manager, each manager shall be entitled to a single vote on all matters properly brought before the managers, and all decisions of the managers shall be made by majority vote of the managers); *see also* 44:7, 8 La. Civ. L. Treatise, Business Organizations § 44:7. This opinion does not make a determination as to whether the Maison Royale is member-managed or manager-managed.

[31] In a manager-managed LLC, majority vote of members is also required in: the dissolution or winding up of the LLC; the sale, exchange, lease, mortgage, pledge, or other transfer of all or substantially all of the assets of the LLC; the merger or consolidation of the LLC; the incurrence of indebtedness by the LLC other than in the ordinary course of its business; the alienation, lease or encumbrance of any immovables of the LLC; and an amendment to the article or operating agreement of the LLC. *See* La. R.S. 12:1318(B).

In *Bourbon Invs., LLC*, 2015-1234, 207 So.3d 1088, an LLC, which was formed for the sole purpose of purchasing two restaurants filed suit against the vendor and others. The defendants filed an exception of procedural capacity and an exception of no right of action, claiming that the LLC lacked authorization from a majority of the members to file the suit. The defendants claimed that only two members voted to bring the lawsuit and the LLC had a total of six members. The trial court granted the exceptions. After the denial of the motion for new trial, the LLC appealed. This Court found the two members of the LLC lacked capacity to bring suit against the defendants and affirmed the trial court's judgment. The Court stated in part:

> As previously determined, at the time the ratification meeting was held the LLCs had five voting members. Only three of these members were given proper notice of the meeting, and only two of the members present voted in favor of the resolution. Therefore, a majority of the members did not vote to approve the resolution as required by LLC law, resulting in the resolution failing.

*Bourbon Invs., LLC*, 2015-1234, p. 13, 207 So.3d at 1095.

Here, as noted above, the LLC documents filed with the Secretary of State only show that Adams is a member of Maison Royale. Even assuming Sutton is also a member, he would have to obtain Adams' approval to file suit on behalf the LLC. Plaintiffs fail to plead or to prove a decision was made by the majority of the members to file suit in this case on behalf of Maison Royale. Because there is no evidence he had the vote of the majority of the members to file suit, similar to *Bourbon*, Sutton lacked capacity to bring the instant lawsuit.

Plaintiffs have not shown that Sutton is a member or manager with the authority to act and file suit on behalf of Maison Royale. Therefore, the trial court did not err in granting the exception of lack of procedural capacity in this regard.

21

*Opportunity to Amend Petition*

Plaintiffs argue that the trial court erred in failing to give them the opportunity to amend their petition.

La. C.C.P. art. 933(B) provides that when the grounds (other than prematurity)[32] pleaded in the dilatory exception may be removed by an amendment of the petition "the judgment sustaining the exception shall order plaintiff to remove them within the delay allowed by the court; and the action, claim, demand, issue or theory subject to the exception shall be dismissed only for a noncompliance with this order."

However, the right to amend is not absolute. *Smith v. Barial*, 2018-0573, p. 8 (La. App. 4 Cir. 12/19/18), 318 So.3d 801, 808, (citing *Roy Anderson Corporation v. 225 Baronne Complex*, L.L.C., 2017-1005, p. 14 (La. App. 4 Cir. 7/11/18), 251 So.3d 493, 503. When the grounds for sustaining the exception cannot be removed, amendment is not permitted when it would constitute a vain and useless act. *Id.; see also Wegmann v. Tramontin*, 2015-0561, p. 8 (La. App. 4 Cir. 1/13/16), 186 So.3d 236, 241 (stating that "if the amendment is futile, there is no right to amend"). Thus, "[t]he right to amend is qualified by the restriction that the objections to the petition must be curable and the decision to allow amendment is within the trial court's discretion." *Hester v. Hester*, 96-0189, p. 6 (La. App. 4 Cir. 9/11/96), 680 So.2d 1232, 1235 (citing *Doe v. Entergy Services, Inc.*, 608 So.2d

---

[32] La. C.C.P. art. 933(A) provides that if "the dilatory exception pleading prematurity is sustained, the premature action, claim, demand, issue or theory shall be dismissed."

684, 687 (La. App. 4 Cir. 1992); *Whitney Nat. Bank v. Jeffers*, 573 So.2d 1262, 1265 (La. App. 4 Cir. 1991).[33]

Plaintiffs have not put forth any argument as to what new allegations of fact would establish Sutton has the authority to act on behalf of Maison Royale or RJANO that would remove the basis of the exception. In fact, as noted by Defendants, Plaintiffs argue in their brief that all the relevant facts establishing Sutton's capacity to sue are already contained in the petition. Based on the record before this Court, Sutton cannot demonstrate that he has the authority to bring the instant lawsuit on behalf of Maison Royale or RJANO and has not shown that an amended petition could cure the grounds for granting the exception of lack of procedural capacity. As such, the trial court did not abuse its discretion by refusing to allow Plaintiffs to amend the petition.

**CONCLUSION**

Sutton has not established that he has the legal capacity to sue on behalf of RJANO or Maison Royale against Defendants. Further, an amendment to the petition cannot cure the deficiency. Accordingly, the trial court did not err in granting Defendants' exception of lack of procedural capacity and dismissing the lawsuit with prejudice. Because we find that Sutton lacks procedural capacity to bring this suit, we do not address Plaintiffs' remaining assignments of errors.

**AFFIRMED**

---

[33] Although *Hester* and *Whitney* discussed the right to amend upon the granting of a peremptory exception under La. C.C.P. art. 934, La. C.C.P. art. 933(B), which is applicable to dilatory exceptions, contains similar language.